MICHAEL BAILEY
United States Attorney
District of Arizona

MARK J. WENKER
Assistant United States Attorney
Arizona State Bar No. 018187
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
mark.wenker@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Twenty-Three Firearms,<br><br>　　　　　Defendants *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE** *IN REM* |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"):

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit property to the United States pursuant to 18 U.S.C. § 924(d) because the defendants *in rem* are firearms involved in or used in a knowing violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm.

2. This is a civil action *in rem* to forfeit property to the United States pursuant to 18 U.S.C. § 924(d) because the defendants *in rem* are firearms involved in or used in a knowing violation of 18 U.S.C. §§ 2 and 922(g)(1), Aiding and Abetting a Felon in Possession of a Firearm.

3. Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j), and 28 U.S.C. §§ 1355(b) and 1395 as acts and omissions occurred in the District of Arizona

that give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355, and 18 U.S.C. § 981(h).

## THE DEFENDANTS *IN REM*

4.   The defendants *in rem* consist of the following:

   a. Remington Arms Company, Inc., XP100 .221 caliber Pistol, SN: A7501462
   b. Colt King Cobra .357 caliber Revolver, SN: EC0877;
   c. Smith & Wesson K-22 .22 caliber Revolver, SN: 248196;
   d. High Standard Sentinel MKIV .22 caliber Revolver, SN: S48966;
   e. Colt King Cobra .357 caliber Revolver, SN: K2230C;
   f. Iver Johnson Hammer .38 caliber Revolver, SN: G42028;
   g. Taurus 605 .357 caliber Revolver, SN: 0E67414;
   h. Smith & Wesson 19 .357 caliber Revolver, SN: K620556;
   i. High Standard DM101 .22 caliber Derringer, SN: 1816027;
   j. Colt Python .357 caliber Revolver, SN: 55936E;
   k. RG Industries RG31 .38 caliber Revolver, SN: Q172480;
   l. Colt Peacekeeper .357 caliber Revolver, SN: 64675V;
   m. Century Arms International L1A1 .308 caliber Sporter Rifle, SN: 100084;
   n. F.N. (FN Herstal) FAL .308 caliber Rifle, SN: A06411;
   o. Ruger Mini 14 .223 caliber Rifle, SN: 182-01192;
   p. Ruger Mini 14 .223 caliber Rifle, SN: 181-43071;
   q. Winchester 9422M XTR .22 caliber Rifle, SN: F335297;
   r. Ruger 10/22 .22 caliber Rifle, SN: 171527;
   s. Remington Arms Company, Inc., 742 .308 caliber Rifle, SN: 364400
   t. Remington Arms Company, Inc., 870 Express 12 gauge Shotgun, SN: W580755M;
   u. Winchester 67A .22 caliber Rifle, SN: None;
   v. Remington Arms Company, Inc., 1100 LT20 Shotgun, SN: M957275U; and

w. Mossberg 500A 12 gauge Shotgun, SN: K952761 (collectively the "defendant property"). The defendant property is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

## BACKGROUND

5. On September 18, 2009, a jury in the United States District Court in the Western District of Washington found Todd G. Howard ("T. Howard") guilty on one count of violating 18 U.S.C. § 1071, Harboring or Concealing a Fugitive, and one count of violating 18 U.S.C. § 1001(a)(2), False Statements, both offenses punishable by a term of incarceration exceeding one year, *USA v. Todd Gehman Howard*, 09CR05350RBL. The Court sentenced T. Howard to probation for a term of two years and further ordered T. Howard not to possess a firearm, ammunition, a destructive device, or any other dangerous weapon, and because of his felony convictions, T. Howard is prohibited from possessing firearms, ammunition or destructive devices.

6. On August 13, 2018, T. Howard filed a motion seeking to, among other things, vacate his 2009 judgment and conviction and reverse all effects of the judgment. T. Howard filed the motion based upon his sovereign citizen beliefs that as a "free citizen" the court lacked standing and jurisdiction over his case.

7. On August 23, 2018, U.S. District Judge Ronald B. Leighton denied the motion, *Todd Gehman Howard v. United States of America*, C18-5658RBL. By filing his motion, T. Howard clearly knew that he was a felon and that he was a prohibited possessor of firearms and ammunition.

8. In June of 2019, the Phoenix office of the Federal Bureau of Investigation (FBI) began an investigation into the activities of T. Howard for violations of 18 U.S.C. 922(g)(1).

9. Before moving from the State of Washington to Kingman, Arizona, T. Howard retrieved his firearms and transported them from Tenino, Washington, to Kingman, Arizona.

3

10. On October 7, 2019, the FBI conducted a UCE operation acting as prospective buyers, whereby they were able to tour T. Howard's residence which was for sale. During the walk through of the residence, the UCE observed a jar in plain view, containing several dozen expended shell/cartridge casings of a caliber larger than .223/5.56 on top of a gun safe located in one of two closets in the master bedroom. Photographs of those items were taken, and sent to ATF Special Agent Lowell Farley (SA Farley).

11. SA Farley, a recognized expert in United States District Courts for the District of Arizona and the Southern District of Texas, reviewed a photograph of the casings, and determined the spent cartridge casings met the definition of ammunition as set forth in 18 U.S.C. § 921(a)(17).

12. Although SA Farley was unable to ascertain the head stamps on the cartridge casings, SA Farley advised investigators that no cartridge casings were manufactured in the State of Arizona and therefore the cartridge casings would have had to move or otherwise travel in interstate commerce in order to arrive in the State of Arizona.

13. On October 10, 2019, Deborah M. Fine, United State Magistrate Judge, District of Arizona, issued a Search and Seizure Warrant (19-5455MB) for a residence located at 2577 Diamond Spur Street, Kingman, Arizona, owned and occupied by Elizabeth June Howard.

14. Also living at the residence were T. Howard (Elizabeth's son), T. Howard's current wife, Lindsay Smith Howard, and five children. The search warrant included outbuildings, appurtenances and vehicles registered to T. Howard.

15. Agents with FBI and ATF executed the search warrant on October 11, 2019 resulting in the seizure of the defendant property.

16. During the execution of the search warrant, investigators located a safe in the second of two walk-in closets located within the master bedroom. The second closet

contained men's clothing and men's shoes and an American Security Products combination safe approximately four to five feet tall and two feet wide.

17. On top of the safe, investigators observed a jar containing several dozen expended shell/cartridge casings of a caliber larger than .223/5.56.

### *Interview of T. Howard*

18. After providing T. Howard with a copy of the search warrant, T. Howard advised investigators, "If I'm not under arrest, I'm not required to say anything because I'd be entitled to counsel." Investigators informed T. Howard he was not under arrest and that he had every right not to answer and questions.

19. Investigators asked for any combinations to any safes located in his residence. T. Howard responded by stating, if there was a safe in the house and he did not know the combination, he could not give it to them.

20. T. Howard stated there were no weapons in the house that he knew about, or had access to, further stating, "I suppose that's all I'm going to say."

21. When asked if his fingerprints would be on any weapons found in the residence, T. Howard stated, "I suppose if I had access to counsel he would be able to help me answer or be able to tell me if I should answer."

### *Interview of Lindsay Ann Smith Howard*

22. Investigators advised Lindsay Ann Smith Howard (Smith) that she was not in custody and free to leave.

23. Smith was advised a gun safe had been located in one of two closets within the master bedroom. Specifically, the safe was located in the closet that contained men's clothing and men's shoes. Smith had her own separate closet in the master bedroom adjacent to T. Howard's closet.

24. Smith informed investigators T. Howard did not have access to the items in the safe after they had the old combination changed. Smith advised she opened the safe on occasion, but had not done so recently.

25. Smith believed she would be able to open the safe for investigators. After several attempts, Smith was unsuccessful.

26. Investigators asked Smith about the small safe located under one of the nightstands next to the bed in the master bedroom. Smith advised the safe was hers, and that it contained a handgun.

27. Smith unlocked the small safe. Inside investigators located a Taurus .357 Magnum Revolver, SN: 0E67414, along with ammunition and holsters. Smith informed investigators that T. Howard did not have access to the revolver, because he did not know the combination to the safe.

### *Contact with Elizabeth June Howard*

28. Investigators asked the homeowner, Elizabeth June Howard (E. Howard), to open the safe located in a closet in the master bedroom.

29. E. Howard advised investigators at one time she stored her jewelry in the gun safe, but had not stored her jewelry there since the combination to the safe was changed.

30. E. Howard stated there were guns in the safe, which belonged to her late husband, but she did not know the combination and was unable to remember when the combination was changed. E. Howard advised she might have the combination in her files located in her bedroom.

31. Investigators observed E. Howard had an unsecured firearm in her bedroom.

32. E. Howard located a receipt from Northwest Lock & Safe, dated March 9, 2015, made out to Todd Howard, with a charge of $55.00. The listed service was for a change to the safe combination. A business card for Northwest Lock & Safe was stapled to the receipt, and the combination to the safe, 61-89-69-95, was written on the back.

33. T. Howard retained Northwest Lock & Safe to change the combination to the safe. T. Howard knew the combination to the safe and had access to the safe and its contents.

6

34. Investigators opened the safe and found the defendant property in it.

36. Included in the seized property investigators located a Ruger Mini 14 .223 caliber Rifle, SN: 182-01192 (item o in the list of defendant property) which was traced to T. Howard as the original purchaser. T. Howard purchased this rifle on March 5, 1980, which was prior to his 2009 federal felony convictions.

37. As a result of the conviction, T. Howard was ordered not to possess any firearms, an order he did not obey.

### *Locked Filing Cabinet*

38. During the execution of the search warrant, investigators located a locked gray/blue filing cabinet, stacked on top of another filing cabinet within the attached three-car garage.

39. Investigators asked T. Howard to unlock the cabinet. T. Howard responded he did not have access to the cabinet and directed investigators to his mother E. Howard.

40. When investigators asked E. Howard for the keys to the cabinet, E. Howard directed investigators to T. Howard for the keys.

41. Investigators informed E. Howard, that T. Howard directed them to her. E. Howard responded, "did he give you permission?" Investigators explained that the lock to the cabinet would be drilled out unless it could be opened with a key.

42. E. Howard retrieved a key from a bag located inside T. Howard's van.

43. Inside the cabinet investigators found multiple boxes of ammunition and sovereign citizen type documents to include arrest warrants for individuals involved in prior prosecutions of T. Howard, declarations by T. Howard that he is a sovereign citizen.

44. Also located in the cabinet, inside a plastic bag, were items that appeared to be rifle ammunition casings with a type of wick inserted at the top.

45. To determine if T. Howard possessed keys to the filing cabinet that contained the ammunition and explosive devices, investigators asked T. Howard for the keys to the Buick sedan in the garage.

7

46. T. Howard reached into a bag he kept with him that contained dozens of keys. T. Howard provided investigators with a small ring with several keys attached. One of the keys looked similar in size and shape to the key for the filing cabinet. Investigators were able to unlock the cabinet with the key provided by T. Howard.

47. Investigators informed T. Howard, E. Howard and Smith, that potential explosive devices were located in the garage within the locked filing cabinet. Investigators described the devices as rifle ammunition cases containing powder and a wick.

48. T. Howard quickly stated he did not know anything about them.

49. E. Howard also stated she did not know anything about them either and turned to T. Howard and said, "your father wouldn't have made anything like that." T. Howard agreed.

50. E. Howard asked T. Howard if his uncle had given him the devices along with the hunting stuff. T. Howard responded that those would not be used for hunting.

51. Investigators advised T. Howard, E. Howard and Smith that the search would take several more hours as bomb technicians had been notified, and were several hours away.

52. FBI Special Agent Bomb Technicians (SABT) and the Kingman Police Department Bomb Squad arrived at 2577 Diamond Spur St., Kingman, Arizona, to verify, render safe and transport the devices.

53. Kingman PD Bomb Squad technicians located thirteen devices in a plastic bag. Bomb technicians described the devices as small in diameter copper tubes, crimped on one end with green hobby fuse, and plugged with a wax substance on the opposite end. The Kingman PD Bomb Squad remotely moved the plastic bag and its contents to the back yard of the residence and x-rayed the devices with a Scan X Scout portable scanner, which revealed the tubes contained a fuse and dense material called filler. Based on training and experience bomb technicians believed the filler to be energetic or explosive.

54. Upon arrival of FBI SABT, a decision was made to separate the fuses from the copper bodies via the use of a robot. This was not successful.

55. Technicians used a ratchet cutter assembly on the robot to cut one of the tubes through the middle. The cut revealed a wax material with small dark flakes. A Thermo Scientific First Defender RMX Handheld Chemical Identification System confirmed the mixed material to be energetic. During the test, the material reacted to heat from the machine and ignited.

56. Technicians placed the remaining devices in blast proof containers, and removed them from the residence.

*Forensic Analysis*

57. After the execution of the federal search warrant, ATF took custody of the explosive devices for processing and forensic analysis.

58. In October 2019, the firearms and ammunition were transported to the Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), Tucson Sector, Firearms Laboratory located in Tucson, Arizona, in Pima County, for forensic processing of such for fingerprint and DNA analysis.

59. In November 2019, investigators retrieved the firearms and ammunition from the USBP firearms lab in Tucson, Arizona and return them to FBI custody.

60. In November 2019, ATF took custody of the firearms and ammunition and initiated administrative forfeiture proceedings on November 25, 2019.

61. In December 2019, a federal search warrant was obtained for T. Howard's DNA and fingerprints and executed the search warrant and obtained T. Howard's DNA and fingerprints, and submitted a copy to the USBP for comparison.

62. ATF commenced administrative forfeiture proceedings for the defendant property and on or about January 7, 2020, E. Howard filed a claim with ATF, stating that she is the sole innocent owner of the defendant property.

63. E. Howard further stated the defendant property was purchased by her late husband, David Cornelius Howard, Jr.

64. In March 2020, investigators received a copy of the lab report from the USBP lab in Tucson, Arizona. Investigators interpreted this report to state that T. Howard's fingerprints were positively identified on one of the FAL style magazines that was recovered by the FBI from T. Howard's residence. That magazine was loaded with 20 rounds of .308 cartridges.

65. The following are among the results of the testing and analysis with respect to the defendant property found in the gun safe that was in T. Howard's bedroom:

a. Item 4 (swabs from a Colt .357 revolver): Male and female DNA was obtained from item 4. Item 4 was interpreted as originating from four individuals. The DNA results from item 4 are 21 trillion times more likely if T. Howard and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | $2.1 \times 10^{13}$ (21 trillion) | Very Strong Support for Inclusion |

b. Item 15 (swabs from Smith & Wesson Model 712): Male DNA was obtained from item 15. Item 15 was interpreted as originating from three individuals. The DNA results from item 15 are 8.7 trillion times more likely if T. Howard and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | $8.7 \times 10^{12}$ (8.7 trillion) | Very Strong Support for Inclusion |

c. Item 28 (swabs from Remington 870 12 gauge shotgun): Male and female DNA was obtained from item 28. Item 28 was interpreted as originating from three individuals. The DNA results from item 28 are 3.9 million times more likely if T.

Howard and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | $3.9 \times 10^6$ (3.9 million) | Very Strong Support for Inclusion |

    d.    Item 30 (swabs from Ruger 10-22 rifle with box magazine): Male and female DNA was obtained from item 30. Item 30 was interpreted as originating from three individuals. The DNA results from item 30 are 14 billion times more likely if T. Howard and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | $1.4 \times 10^{10}$ (14 billion) | Very Strong Support for Inclusion |

    e.    Item 6 (swabs from Colt King Cobra .357 revolver). Male and female DNA was obtained from items 6. Items 6 were interpreted as originating from four individuals. The DNA results from items 6 are 450 quadrillion times more likely if T. Howard and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | $4.5 \times 10^{17}$ (450 quadrillion) | Very Strong Support for Inclusion |

    f.    Item 26 (swabs from .308 L1A1 Sporter 60D rifle): Male DNA was obtained from item 26. Item 26 was interpreted as originating from three individuals. The DNA results from item 26 are 3.0 million times more likely if T. Howard and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | $3.0 \times 10^6$ (3.0 million) | Very Strong Support for Inclusion |

      g.    Item 32 (swabs from Ruger mini 14 rifle with midrange scope and sling): Male and female DNA was obtained from item 32. Item 32 was interpreted as originating from three individuals. The DNA results from item 32 are 3.7 quadrillion times more likely if T. Howard and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | 3.7 x 10$^{15}$ (3.7 quadrillion) | Very Strong Support for Inclusion |

      h.    Item 34 (swabs from Sturm, Ruger and Co. Mini-14 .223 cal rifle with scope, laser, and sling): Male and female DNA was obtained from item 34. Item 34 was interpreted as originating from four individuals. The DNA results from item 34 are 60 trillion times more likely if T. Howard and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.

| Person of Interest | Likelihood Ratio | Level of Support |
|---|---|---|
| Howard | 6.0 x 10$^{13}$ (60 trillion) | Very Strong Support for Inclusion |

66.    T. Howard possessed the defendant property that was stored in the gun safe.

***Interview of Ron Gordon***

67.    On October 18, 2019, FBI SA Donald Ferreira (SA Ferreira) telephonically interviewed Ron Gordon (Gordon), owner of North West Lock and Safe located at 2131 Northern Avenue, Kingman, Arizona, until he sold the company to Lee and Robin Latimer on October 1, 2016.

68.    Gordon did not remember the exact transaction between T. Howard and his business, but did advise that the "2617 Broken" written on the receipt was his [Gordon's] home address.

69.    Gordon believed that customer T. Howard could have transported the safe to his home address or to his business to re-key the combination. Gordon further believed that he generally used a tricolored receipt for most of his transactions, however on this

occasion, he must have used a separate receipt book. Gordon advised he did not maintain any records of customers after he sold the business.

### *Interview of Steve Sharp*

70. On November 11, 2019, SA Ferreira was contacted by Steve Sharp (Sharp), an employee of North West Lock and Safe located at 4125 North Bank Street, Kingman, Arizona 86409.

71. Sharp was given SA Ferreira's telephone number by the former owner of North West Lock and Safe Ron Gordon in regards to a suspicious phone call Sharp received from an individual who identified himself as Todd Howard, calling to obtain the combination to a safe that had been serviced at North West Lock and Safe.

72. Sharp informed SA Ferreira that he called Gordon because the service on T. Howard's safe was conducted at the time Gordon was the owner of North West Lock and Safe.

73. Sharp asked S.A. Ferreira if it was ok to give the individual the combination to his safe. SA Ferreira informed Sharp that he was free to give him whatever information he needed. Sharp informed the agent that he would let him know what happened.

74. On December 10, 2019, Sharp informed SA Ferreira that he called the individual back later that day and told him he found the combination to his safe, and that he could bring the safe by the store and Sharp would give him the combination.

75. The individual asked, "what was the previous invoice date". Sharp advised the individual the previous invoice date was March 9, 2015. Sharp informed SA Ferreira that he never heard from the individual again. Sharp believed the individual was just fishing for information.

76. T. Howard kept the defendant property in a safe in his bedroom, knew the combination to the safe, had access and control of the defendant property, and possessed the defendant property.

13

77. E. Howard, knowing T. Howard was a prohibited possessor, permitted and allowed T. Howard to possess the defendant property in a gun safe in his bedroom closet.

### FIRST CLAIM FOR RELIEF

The defendant property was a firearm or ammunition involved in or used in a knowing violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d).

### SECOND CLAIM FOR RELIEF

The defendant property was a firearm or ammunition involved in or used in a knowing violation of 18 U.S.C. §§ 2 and 922(g)(1), Aiding and Abetting a Felon in Possession of a Firearm, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. 924(d).

### NOTICE TO ANY POTENTIAL CLAIMANT

If you assert an interest in the subject property and want to contest the forfeiture, you must file a verified claim that fulfills the requirements set forth in Supplemental Rule G. To avoid entry of default, a verified claim must be filed no later than thirty-five days from the date this Complaint has been sent in accordance with Supplemental Rule G(4)(b).

An answer or motion filed under Fed. R. Civ. P. 12 also must be filed no later than twenty-one days after filing the claim. The claim and answer must be filed in the United States District Court for the District of Arizona under the case number listed in the caption above and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

This notice provision does not provide you with any legal advice and is designed only to provide you with a general understanding of these proceedings. Any statements made in your claim or answer may be introduced as evidence against you in any related or future criminal case. You should consult an attorney to represent your interests in this matter, and note that a stay of proceedings may be available under 18 U.S.C. § 981(g)(2).

IF YOU ARE A VICTIM, and have sustained economic loss as a result of the crime(s) giving rise to this civil action, you may be entitled to petition for remission, mitigation, or restoration under Title 28, Code of Federal Regulations ("C.F.R."), section 9.2. In lieu of filing a Claim with the Court, you may promptly submit a letter outlining your interest in the property to the undersigned Assistant United States Attorney. Plaintiff will notify you when it has received your letter, and further instructions may be provided upon conclusion of this action. The United States Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding under 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d). If your status as a victim is contested, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

IF YOU ARE A LIENHOLDER, it is the policy of the United States Attorney's Office to honor all claims received from legitimate titled lienholders as defined under 28 C.F.R. § 9.2. In lieu of filing a claim with the Court, you may send a letter to the undersigned Assistant United States Attorney outlining your interest in the property, including: (1) the amount presently owed on the lien; (2) a copy of the security agreement setting forth your interest; and, (3) whether the owner is in default. If your lien is sufficient, Plaintiff will notify you to verify receipt of your letter. In the event of forfeiture, and to the extent practicable, proceeds from the sale and disposition of the subject property will be remitted to you in satisfaction of the lien. As noted above, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

### **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such

other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

        Respectfully submitted this 2nd day of July, 2020.

                                      MICHAEL BAILEY
                                      United States Attorney
                                      District of Arizona

                                      *S/Mark J. Wenker*
                                      MARK J. WENKER
                                      Assistant United States Attorney

## VERIFICATION

I, Jason L. Saitta, hereby verify and declare under penalty of perjury that, I am a Special Agent for the Federal Bureau of Investigation, that I have read the foregoing Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed on this 25th day of June 2020,

Jason L. Saitta, Special Agent
Federal Bureau of Investigation

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff**(s): **United States of America**
County of Residence: Maricopa
County Where Claim For Relief Arose: Maricopa

**Defendant**(s): **Twenty Three Firearms**
County of Residence: Maricopa

Plaintiff's Atty(s):
**Mark J Wenker**
**Arizona**

Defendant's Atty(s):

II. Basis of Jurisdiction:   **1. U.S. Government Plaintiff**

III. Citizenship of Principal Parties
(Diversity Cases Only)
   Plaintiff:- **N/A**
   Defendant:- **N/A**

IV. Origin :   **1. Original Proceeding**

V. Nature of Suit:   **690 Other**

VI. Cause of Action:   **civil action in rem to forfeit property to the United States pursuant to 18 U.S.C. § 924(d)**

VII. Requested in Complaint
   Class Action: **No**
   Dollar Demand:
   Jury Demand: **No**

VIII. This case **is not related** to another case.

Signature:  **s/Mark J. Wenker**

Date:  **07/02/2020**

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and

**change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

**Revised: 01/2014**

Case 3:20-cv-08162-DWL   Document 1-2   Filed 07/02/20   Page 2 of 2
**change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

**Revised: 01/2014**